Gary SPANGLER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 16S04–9301–CR–145.

Supreme Court of Indiana.

Jan. 22, 1993.

Jack R. Shields, Shields & Jones, Batesville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

## ON CRIMINAL PETITION TO TRANSFER

DeBRULER, Justice.

The Decatur County Sheriff's Department arrested Appellant Gary Spangler after he refused to accept service of a Temporary Protective Order and an Order to Appear before the Decatur County Court. Following a bench trial, the Decatur County Court, L. Mark Bailey, J., convicted Spangler of the criminal offense of Resisting Law Enforcement, Ind.Code § 35–44–3–3, a Class A Misdemeanor. The court sentenced Appellant Spangler to six months in jail, and assessed him $250.00 in fines and $163.00 in Court costs, but suspended the jail sentence and the fine. With memorandum opinion, the Indiana Court of Appeals (Fourth District) affirmed the conviction. 594 N.E.2d 539. This cause comes to us on Petition to Transfer. Transfer is granted.

On December 4, 1990, the Decatur County Court granted a Temporary Protective Order, pursuant to I.C. § 34–4–5.1–2, against Spangler. The following day, the Decatur County Sheriff's Department received a copy of the protective order, which directed the Decatur County Sheriff to serve a copy of the Temporary Protective Order and Order to Appear upon Spangler, and to certify service of the orders to the court.

Deputies from the Decatur County Sheriff's Department made numerous unsuccessful attempts to locate Spangler's place of residence in order to serve the orders. The deputies attempted contacting Spangler by telephone, calling his home number and places of employment. The deputies left messages for Spangler to retrieve the court documents from the Sheriff's office, but were not able to contact him until later that week.

On December 7, 1990, Deputy Daryl Templeton of the Decatur County Sheriff's Department telephoned the United States Post Office branch in Greensburg, Indiana, one of Spangler's places of employment. When Spangler answered the call, Templeton identified himself as a member of the Decatur County Sheriff's Department, and notified Spangler that the department was trying to deliver some court documents to him. Spangler stated, "Don't you ever call me at work again," then hung up on Templeton. Record at 36.

Templeton immediately carried the court orders to the post office to attempt personal service on Spangler. Templeton approached a counter window at the post office and asked the counter attendant whether Spangler was present. The attendant walked to the back of the post office and brought Spangler to the counter window. Templeton, identifying himself as a member of the Decatur County Sheriff's Department, attempted to deliver the orders. Spangler refused to accept the papers, stating, "Don't you ever give up? ... I told you not to bother me at work.... You're not going to give them to me here.... Don't you ever bother me at work again." Record at 38.

Spangler turned to walk away from Templeton, but Templeton ordered Spangler to return, warning "Gary, come back here and if you don't settle yourself down, you're going to be arrested for disorderly conduct." *Id.* Spangler stopped long enough

to express his dissatisfaction with Templeton, stating, "I'm not going to take those papers here, don't bother me." Record at 38. Spangler then walked to the back of the post office building.

Templeton summoned another postal worker and asked that worker to have Spangler return to the counter. When Spangler returned, he walked through a doorway into the front lobby where Templeton was standing. Again, Spangler refused service and reiterated his demand that the Sheriff's office stop bothering him at work. Spangler turned to walk away, and Templeton ordered, "Don't walk away from me." Record at 59. Spangler responded, "I've got work to do and they've got a job to do here ... if you want to arrest [me] for something go ahead but otherwise I've got a job to do." Record at 59–60. The entire incident lasted between 30 seconds and one minute. Templeton arrested Spangler for Disorderly Conduct, based on Spangler's continued refusal to accept service and his uncooperative state. Templeton served the Protective Order and the Order to Appear on Spangler later that day at the Decatur County Jail.

On May 21, 1991, the State filed an Information that added the charge of Resisting Law Enforcement to the original charge of Disorderly Conduct. The trial court convicted Spangler of Count I Resisting Law Enforcement, but acquitted him of Disorderly Conduct. In its Order denying a Motion to Correct Errors, the trial court found that Spangler's actions to resist "were active, not passive, in nature and therefore, forceful, [and] unlawful." Record at 12. The Indiana Court of Appeals (Fourth District) affirmed the trial court decision, finding that while appellant did not exercise physical force, he nonetheless acted to resist, and that evidence of those actions was sufficient evidence to prove guilt.

Spangler does not dispute the fact that the deputy was authorized to serve the civil order of the court. Statutes authorize orders of this type, I.C. § 34–4–5.1–2, and service by the sheriff, I.C. §§ 33–3–1–5, 33–6–1–11, and 36–2–13–5(a)(5). Nor does he

contend that his actions were done without the requisite intent, i.e., knowing. Spangler does not argue that he did not "resist" the authorized service of the court order. The evidence produced at trial clearly shows that Spangler attempted to evade service of process at his place of work. Spangler's continued expressions of dissatisfaction with Deputy Templeton and the Decatur County Sheriff's Department, along with Spangler's continued evasion of Templeton, are sufficient to show such resistance. What Spangler does seek to show is that his actions in evading service of the court orders were not forcible, thus not in violation of the statute. We granted transfer to address the apparent conflicting views in the Indiana Court of Appeals, and to clarify the meaning of the statute.

Spangler was convicted of Resisting Law Enforcement, I.C. § 35–44–3–3, which reads in part:

> Sec. 3(a) A person who knowingly or intentionally:
>
> (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court .
>
> commits resisting law enforcement, a Class A misdemeanor.

The Information charged that Spangler "did knowingly and forcibly resist the authorized service of an order, to-wit,: a temporary protective order entered by the Decatur County Court." Record at 15.

The fundamental conflict within the Court of Appeals is whether the word "forcibly" modifies a required element of the crime Resisting Law Enforcement. Appellant contends that the Third District Court of Appeals' interpretation is correct, citing *White v. State* (1989), Ind.App., 545 N.E.2d 1124. In *White*, the trial court convicted the defendant of forcibly interfering with a law enforcement official or persons assisting them. In overturning the conviction, the Third District Court of Appeals found that the use of force is an essential element of resisting law enforcement, because the word "forcibly" appears on the face of the statute. The First District Court of Appeals also recognized that use of force is

required in order to violate the statute. *See O'Connor v. State* (1992), Ind.App., 590 N.E.2d 145.

■ All statutes are to be examined and interpreted as a whole, giving common and ordinary meaning to English words found in everyday speech. *Foremost Life Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 409 N.E.2d 1092, 1096. In construing a statute, effect should be given to every word and clause therein. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32, 38. On the face of this particular statute, the word "forcibly" appears directly before the word "resists." A correct interpretation of the statute requires us to give meaning to the word "forcibly," because the legislature included the word in the statute. In order to sustain the conviction, the State must have proven not only that Spangler resisted, but that he forcibly resisted, because the modifying word "forcibly" is within that section of the statute. "Forcibly" is a required element of the crime, and it is error to find that mere action to resist service of process falls within the statute, absent a showing of use of force.

At trial and on appeal, Spangler argued that the word "forcibly" modified the string of verbs "resists, obstructs, or interferes" in the statute. Again, Spangler relied on *White*, where the court concluded that "the use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all." *White* at 1125 (quoting *Long v. U.S.* (4th Cir.1952), 199 F.2d 717, 719).

■ When construing a statute, the Court must also examine the grammatical structure of the clause or sentence in issue. *Foremost Life Ins.* 409 N.E.2d at 1096. Here, the legislature placed the modifier "forcibly" before the verb "resists," and "resists" was the first in a string of verbs. If the legislature had intended only to modify "resists," then "forcibly" would have appeared after the verb, and the statute would have instead read "resists forcibly, obstructs, or interferes." We agree with the Third District Court of Appeals that "forcibly" modifies the entire string of verbs in that particular section of the statute, due to the placement of the adverb before the string of verbs in that particular clause.

■ We turn then to consider the appropriate meaning of the term "forcibly" as it is used in this statute. As this is a penal statute, it is to be strictly construed against the State. *State v. Keihn* (1989), Ind., 542 N.E.2d 963, 965. Our final objective is to determine and effect legislative intent. *Spaulding v. International Bakers Serv.* (1990), Ind., 550 N.E.2d 307, 309. The word "forcibly" is an adverb that modifies the verbs which follow it. "Forcibly" is a word descriptive of the type of resistance, obstruction, or interference, proscribed by law. Resistance, obstruction, or interference, with force is the action the statute addresses. Here, the Court must consider exactly what constitutes force, as applied in the statute.

■ Webster's Third New International Dictionary defines force as "strength or energy especially of an exceptional degree." One alternate definition in that dictionary defines force as "to do violence." The Random House College Dictionary defines force as "strength, energy, power." The "law" definition in that dictionary defines "force" as "unlawful violence threatened or committed against persons or property." Black's Law Dictionary defines "force" as "power dynamically considered, that is, in motion or in action; constraining power, compulsion; strength directed to an end." Further, Black's defines "forcible" as "[e]ffected by force used against opposition or resistance; obtained by compulsion or violence." The common denominators of these definitions are the use of strength, power, or violence, applied to one's actions, in order to accomplish one's ends. We believe that one "forcibly resists" law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.

Another fact convinces us that the legislature intended the term "forcible" to connote some form of violent action toward another. The legislature has, by statute, defined a "forcible felony" as "a felony that involves the use or threat of force against a human being, *or in which there is imminent danger of bodily injury to a human being.*" I.C. § 35–41–1–11 [emphasis added]. It seems clear that the legislature intended the word "force" to mean something more than mere action.

The trial court, in its order denying the Motion to Correct Errors, concluded as a matter of law that Spangler's evasion of service was active, not passive, thus forceful and unlawful. Similarly, the Fourth District Court of Appeals held that appellant's actions to resist come under the dictates of I.C. § 35–44–3–3(a)(2), despite the absence of the exercise of physical force. Both courts distinguish the instant case from *White*. There, the defendant refused to move out of the way so that a tow truck called by police could remove a vehicle found to contain stolen goods. The truck was parked on the defendant's property. Defendant did nothing more than stand his ground, yet police arrested the man for forcibly interfering with a law enforcement official. In *White,* the Court of Appeals held that the defendant's declaration that the tow truck could not drive onto the parking lot, along with the refusal to move, did not amount to forcible interference.

In the case before us, both the trial court and the Court of Appeals characterize Spangler's resistance as active, not passive. We agree with this characterization. Next, both the trial court and the Court of Appeals distinguish the instant case from *White*. In that case, the defendant's actions were entirely passive, not active. From the holding in *White*, the trial court and the Fourth District Court of Appeals in the instant case inferred that any actions to resist would fall within the statute, unless the acts were entirely passive in nature. We do not agree with the lower courts' interpretation. As we have already stated, "forcibly" is an element of the crime. Therefore, any action to resist must be done with force in order to violate this statute. It is error as a matter of law to conclude that "forcibly resists" includes all actions that are not passive.

■ Spangler contends in this appeal that the evidence presented at trial was not sufficient to prove that he acted "forcibly" in the actions that led to his arrest. Appellant contends that there was absolutely no evidence of any force exerted at any time. We now determine whether Spangler resisted with force, based on our determination of the definition of "forcibly" and "force."

Our test for the sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility, but look only to the evidence and the reasonable inferences therefrom which support the verdict. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *King v. State* (1990), Ind., 560 N.E.2d 491, 492. The evidence most favorable to the verdict shows that Spangler, while at his place of employment, abruptly discontinued his telephone conversation with Deputy Templeton. Spangler refused to accept the court documents from Templeton and demanded that Templeton and the Decatur County Sheriff's Department not bother Spangler at work. Spangler continued to express dissatisfaction with Templeton and the Sheriff's Department and Spangler turned and walked away from Templeton three times, in order to avoid service and to resume working.

A review of the record fails to disclose the presence of evidence from which a reasonable trier of fact could conclude with the required level of certainty that Spangler acted forcibly, as forcibly is defined above. There was no strength, power, or violence directed towards the law enforcement official. There was no movement or threatening gesture made in the direction of the official. Spangler repeatedly and firmly refused to accept service of process, then walked away. Looking at the evidence favorable to the verdict, there is no

evidence of any "forcible" actions that the charged crime prohibits.

The State argues that the statute should apply in this case to fulfill the purpose of the statute. The State cites to the purpose of the statute as implied by the decision in *Tapp v. State* (1980), Ind.App., 406 N.E.2d 296. The State argues that the purpose of I.C. § 35–44–3–3 is to give law enforcement officials additional protection, because they are subject to special risks, especially when attempting to perform public duties, such as service of process. *Id.* at 300. According to the State, an officer should not have to wait until some violence is attempted before the officer can arrest the perpetrator. As the trial court noted:

> The process of obtaining jurisdiction over an individual is sometimes fraught with danger and peril. Generally, an individual who refuses or resist [sic] civil process only escalates an already tense situation. This type of activity serves only to frustrate the process and encourage active resistance by all would-be defendants.

Record at 12. Therefore, according to the State, an officer should have the ability to make a preemptive arrest in order to maintain order, especially while attempting to serve process.

While we agree that law enforcement officials deserve additional protections in fulfilling their duties, we cannot say that the purpose of the Resisting Law Enforcement statute expands an officer's authority to make an arrest. Our system of government charges law enforcement officials with upholding the laws as the laws are stated. This statute prohibits the knowing and forcible resistance, obstruction or interference with authorized service of civil process. It goes no further.

█ In Indiana, process is often served by certified mail, pursuant to T.R. 4.11. Indiana law allows delivery of process at the recipient's residence, whether or not the recipient is home and actually receives it at that time. T.R. 4.1(A)(3). Under certain circumstances, service may be made by publication. T.R. 4.13. Due process re-·quires service of notice in a manner reasonably calculated to inform the defendant of the pending lawsuit. *Washington v. Allison* (1992), Ind.App., 593 N.E.2d 1273, 1275. If the process server attempts personal service, and the individual to be served refuses delivery, the refusal may not defeat a court's jurisdiction, since the person to be served is on notice of the pendency of some court proceeding, whether or not that person has actual knowledge of the particular proceeding.

█ Further, T.R. 4.16(A) imposes an obligation of those receiving service of process:

> It shall be the duty of every person being served process to cooperate, accept service, comply with the provisions of these rules, and when service is made upon him personally, acknowledge receipt of the papers in writing over his signature.

If an individual peaceably resists service of process, a court would have sanctioning power over the individual. T.R. 4.16 subjects any person violating any provision of the rule to contempt proceedings. The court could cite the individual for contempt of court for refusing the court order to appear. T.R. 4.16(C) expressly states:

> No person through whom service is made under these rules may impose any sanction, penalty, punishment, or discrimination whatsoever against the person being served because of such service.

The court, not the law enforcement official, is the proper agency to impose punishment upon an individual for refusing to accept the authorized service of process.

For the reasons listed above, the judgment of the trial court is reversed. Retrial would violate the strictures of the Double Jeopardy Clause. *See Williams v. State* (1989), Ind., 544 N.E.2d 161. This case is remanded to the trial court for entry of a judgment of acquittal.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents with opinion.

GIVAN, Justice, dissenting.

I cannot agree with the conclusions reached by the majority after reciting the undisputed facts in this case.

I believe the trial judge correctly summed up the situation when in his order denying the motion to correct error he stated, among other things:

"That the actions of the defendant in resisting, obstructing and interfering with authorized service of process by declaring that he would not accept service at work, by refusing to accept service of process at his place of employment, by ordering the officer to leave and by walking away after receiving an order to stop were active, not passive, in nature and therefore, forceful, unlawful, . . . ."

The holding of the majority makes a mockery of the attempt of a police officer to serve process. If one extends the majority's reasoning to any type of arrest, a person could not be prosecuted under the statute if he simply informed the police officer that he was peacefully refusing to be arrested and turned and walked away or for that matter peacefully ran away. Society should not tolerate, and I doubt it was the intention of the legislature in passing the statute to tolerate rude and insolent refusal to obey a police officer.

I would affirm the decisions of the trial court and the Court of Appeals.