# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BETTY WOODS,                              )
                                         )
    Appellant-Defendant,                 )
                                         )
       vs.                              )     No. 49A02-1309-CR-805
                                         )
STATE OF INDIANA,                         )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Jones, Judge
Cause No. 49F08-1302-CM-011603

**May 29, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Betty Woods ("Woods") was convicted in Marion Superior Court of Class A misdemeanor resisting law enforcement and Class B misdemeanor disorderly conduct. Woods appeals and challenges the sufficiency of the evidence supporting both convictions.

We affirm in part and reverse in part.

**Facts and Procedural History**

On February 19, 2013, at approximately 10:00 a.m., Woods was attempting to purchase a few slices of deli meat at a Citgo Station near the corner of 25th Street and College Avenue. The store owner, Sam Badri ("Badri") informed Woods that deli meat was only sold in half-pound or pound quantities, and Woods became irate. Woods shouted and cursed at Badri and stationed herself by the entrance to the business to complain about the situation to other customers.

Badri asked Woods to leave the store and she refused; therefore, Badri called the police. Indianapolis Metropolitan Police Officer Gregory Taylor ("Officer Taylor") responded to the report of a disturbance at the Citgo Station. Officer Taylor observed Woods standing in the entrance yelling and cursing at the employees while also speaking on her cell phone. Officer Taylor asked Woods to quiet down and step away from the door, and Woods responded, "I don't have to. I talk loud. It's just the way I am." Tr. p. 17.

Officer Taylor was able to coax Woods a few feet away from the doorway, but she continued to shout. Therefore, Officer Taylor told her that she was being placed under arrest for disorderly conduct. Woods started to walk away from Officer Taylor and

2

continued to walk from the officer after he told her to stop. Officer Taylor then "rushed" after Woods and grabbed her wrist. Id. at 19. Officer Taylor told Woods once again to stop. When she attempted to pull away from the officer, Officer Taylor twisted "her wrist a little bit then push[ed] her up against the building with [his] left forearm[.]" Id. at 20. Officer Taylor told Woods to stop, or he would place her under arrest for resisting law enforcement. Woods then relaxed her arms and Officer Taylor was able to place her in handcuffs. [1]

Woods was subsequently charged with two counts of Class A misdemeanor resisting law enforcement and one count of Class B misdemeanor disorderly conduct. A bench trial was held on September 4, 2013. The trial court found Woods guilty of one count of Class A misdemeanor resisting law enforcement[2] and Class B misdemeanor disorderly conduct. Woods was sentenced to an aggregate term of 365 days with 363 days suspended to probation. Woods now appeals challenging the sufficiency of the evidence to support her convictions.

**Standard of Review**

When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind.

---

[1] We are troubled by the State's decision to charge Woods with resisting law enforcement in light of Officer Taylor's promise to Woods and her immediate compliance with the officer in reliance on his promise. Public trust and confidence in our criminal justice system is eroded by small decisions such as this.

[2] Woods was found not guilty of the second count of resisting law enforcement which alleged that she fled from Officer Taylor after he ordered her to stop.

3

2005)), trans. denied. Rather, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

## I. Disorderly Conduct

To convict Woods of Class B misdemeanor disorderly conduct, the State was required to prove that she recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind. Code § 35-45-1-3(a)(2); see also Appellant's App. p. 18. "[T]he criminalization of 'unreasonable noise' was 'aimed at preventing the harm which flows from the volume of noise." Whittington v. State, 669 N.E.2d 1363, 1367 (Ind. 1996) (quoting Price v. State, 622 N.E.2d 954, 966 (Ind. 1993), reh'g denied). Noise is considered unreasonable if it is too loud for circumstances that exist at the time. Id.

Officer Taylor testified that when he arrived at the Citgo station, Woods was agitated and yelling at the Citgo employees. She was also yelling at the person she was speaking to on her cell phone. Woods was asked to quiet down three or four times, but she continued to shout. Tr. p. 17. Individuals standing outside the Citgo station had stopped to observe Woods and Officer Taylor. Badri testified that Woods was yelling "very loud." Tr. p. 7. For these reasons, we conclude that the trial court reasonably inferred that Woods recklessly, knowingly or intentionally made unreasonable noise and

4

continued to do so after Officer Taylor asked her to stop.  We therefore affirm Woods'

Class B misdemeanor disorderly conduct conviction.

## II. Resisting Law Enforcement

Indiana Code section 35-44.1-3-1 provides in relevant part that "[a] person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement."  Woods argues that the State failed to prove that she "forcibly" resisted.

"Forcibly" is an essential element of the crime, and therefore, the State must prove forcible resistance, forcible obstruction, or forcible interference.  Walker v. State, 998 N.E.2d 724, 726 (Ind. 2013).  Forcibly means "something more than mere action."  Id. (citation omitted).  "'[O]ne 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.'"  Id. at 726-27 (quoting Spangler v. State, 607 N.E.2d 720, 723 (Ind. 1993)).  "'[A]ny action to resist must be done with force in order to violate this statute.  It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive.'"  Id. at 727 (quoting Spanger, 607 N.E.2d at 724).

However, "'the statute does not demand complete passivity.'"  Id. (quoting K.W. v. State, 984 N.E.2d 610, 612 (Ind. 2013)).  "The force involved need not rise to the level of mayhem."  Graham v. State, 903 N.E.2d 963, 965 (Ind. 2009).  A very "modest level of resistance" might support the offense.  Walker, 998 N.E.2d at 727 (citing Graham, 903

N.E.2d at 966 (stating "even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice").

In Walker, our supreme court summarized its interpretation of the term "forcibly" as follows:

> [N]ot every passive -or even active- response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence. Moreover, the statute does not require commission of a battery on the officer or actual physical contact - whether initiated by the officer or the defendant.

Id.

In Graham, our supreme court reversed a resisting law enforcement conviction where the defendant was convicted for refusing to present his arms for handcuffing. 903 N.E.2d at 965-66. But the court also observed that "'stiffening' of one's arms when an officer grabs hold to position them for cuffing" constitutes "forcible resistance." Id. at 966. The court cited with approval our court's opinion in Johnson v. State, 833 N.E.2d 516, 517 (Ind. Ct. App. 2005), wherein we concluded that the defendant "forcibly resisted" by pushing away from the officer with his shoulders and stiffening up when the officers attempted to place the defendant in a police vehicle.

Relying on Graham, our court reversed a resisting law enforcement conviction in Berberena v. State, 914 N.E.2d 780 (Ind. Ct. App. 2009), trans. denied. In that case, the officer ordered the defendant to place his hands behind his back, and when the defendant

6

did not comply, the officer pushed the defendant against the wall of a building. The officer then engaged in a brief struggle with the defendant to grab his hands and place them in handcuffs. However, there was no evidence that the "defendant stiffened his arms or otherwise 'made threatening or violent actions' to contribute to" the brief struggle. Id. at 782. Therefore, we concluded that "[b]ecause there was no evidence that Berberena's opposition was forceful rather than merely difficult, the evidence is insufficient to support his conviction." See also Colvin v. State, 916 N.E.2d 306, 309 (Ind. Ct. App. 2009), trans. denied (reversing a resisting law enforcement conviction because the "evidence [did] not support a reasonable inference that Colvin did more than passively resist the officers"); Ajabu v. State, 704 N.E.2d 494, 495-96 (Ind. Ct. App. 1998) (reversing a resisting law enforcement conviction where the defendant resisted by twisting and turning from the officer as he held onto his flag, even after he was maced, and failed to let go of the flag until after the officer dragged him approximately eight to ten feet, but there was no evidence that Ajabu acted forcibly because he made no threatening or violent actions toward the police).

In this case, the following testimony was elicited to describe the level of force Woods used against Officer Taylor. Badri testified that Woods "tried to push the officer and tried to not . . . be arrested to put the handcuff on her." Tr. p. 9. Officer Taylor testified:

> [O]nce I grabbed her by the wrist I then told her to stop. She kind of turned away . . . she turned away at first then turned towards me. I then started to twist on her wrist a little bit and then push her up against the building with my left forearm as I had a hold of her right wrist with my right hand. I told

7

her, "Stop. don't do this or I will place you under arrest for resisting your law enforcement."

Id. at 20. When asked to more specifically describe the "actual physical interaction" between himself and Woods, Officer Taylor stated:

> As I grabbed her wrist she turns . . . she pulls away from me then as she pulls away she turns around and starts facing towards me and then that's when I started to push my left forearm in the middle of her back and push her up against the wall slightly an once we were there I informed her that she needs to stop what she's doing otherwise I was gonna place her under arrest for resisting law enforcement at which time she finally complies and I placed her in handcuffs. She relaxed her arms at that point in time and then that was when I was able to secure her in handcuffs.

Id. at 21. Further, the officer testified that he used a "wristlock twisted fairly sternly" and "a portion of [his] body weight to push her up against the building." Id. The trial court concluded that Officer Taylor's testimony established that Woods "forcibly resisted." Id. at 36.

We disagree. The evidence establishes only that Woods pulled on her wrist after Officer Taylor initially grabbed it and started to turn toward the officer. The officer easily subdued Woods by twisting her "wrist a little bit" and pushing her "up against the wall slightly" with his left forearm in her back. Tr. pp. 20-21. It was at this point that Officer Taylor promised Woods that she would not face a charge of resisting law enforcement if she cooperated, and Woods immediately chose to cooperate with the officer. There is no evidence Woods acted "forcibly." Her response to Officer Taylor's announcement of her impending arrest did not even approach use of the "strong, powerful or violent means" described in Walker. Indeed, Woods immediately cooperated in reliance on Officer Taylor's promise. Under these facts and circumstances, the evidence

8

is insufficient to support her conviction for Class A misdemeanor resisting law enforcement.  See Berberena, 914 N.E.2d at 783.

### Conclusion

The evidence is sufficient to support Woods' disorderly conduct conviction. However, the State presented insufficient evidence to prove that Woods' "forcibly" resisted law enforcement.  We therefore reverse Woods' resisting law enforcement conviction.

Affirmed in part and reversed in part.

FRIEDLANDER, J., and PYLE, J., concur.