**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1405-CR-304 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Collins, Judge
Cause No. 49F18-1211-FD-77410

**November 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Charles Smith appeals his convictions for Battery,[1] a class D felony, Operating a Vehicle While Intoxicated,[2] a class A misdemeanor, and Resisting Law Enforcement,[3] also a class A misdemeanor. Smith challenges the sufficiency of the evidence supporting each conviction.

We affirm.

The facts favorable to the convictions are on November 13, 2012, Officer Marc Klonne of the Indianapolis Metropolitan Police Departments saw Smith driving a vehicle at a high rate of speed drive through a red light. Officer Klonne began to follow Smith. In doing so, he saw Smith drive through another red light and swerve between lanes of traffic to pass a car, nearly causing a collision. Officer Klonne was required to drive approximately 85 miles per hour in order to catch up to Smith and eventually pull him over. Officer Klonne approached Smith's stopped vehicle and immediately smelled the odor of alcohol emanating from it. He observed that Smith's eyes were bloodshot and that his speech was slurred. When the officer asked Smith if he had consumed any alcohol, Smith

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-42-2-1 (West, Westlaw 2013) in effect at the time this offense was committed classified it as a class D felony. This statute has since been revised and in its current form reclassifies this as a Level 6 felony. *See* I.C. § 35-42-2-1(d)(2) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed on November 13, 2012, it retains the former classification.

[2] Ind. Code App. § 9-30-5-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

[3] Ind. Code App. § 35-44.1-3-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

2

responded merely that he was trying to go home. Officer Klonne asked Smith three times to exit his vehicle, but Smith did not respond. Finally, Officer Klonne opened Smith's door and helped him out of his vehicle. Smith was unbalanced and staggered as Officer Klonne took him to the rear of the vehicle. Once there, Officer Klonne frisked Smith and found a half-empty pint bottle of tequila in his pocket.

At this point, Officer Klonne attempted to administer field sobriety tests at the side of the road. He held a pen in front of Smith and asked him to stand with his arms at his side and touch the pen with either his right or left index finger. After the officer explained the test twice, Smith stated that he did not understand what he should do and refused to take the test. Officer Klonne placed Smith under arrest for operating while intoxicated and, after handcuffing him, helped Smith sit on the curb. By this time, other officers had arrived on the scene to assist Officer Klonne. As they awaited the arrival of the transport vehicle, Smith attempted to stand up three times. Each time, the officers physically pushed him back down on the curb. At some point Smith yelled at Officer Kari Pennington, "take these handcuffs off, I'll kick your ass." *Transcript* at 47. Officer Pennington instructed him to sit cross-legged on the curb. At that point, Smith pulled his feet in toward his body and leaned forward as if he was going to get up. Officer Pennington performed a leg sweep, meaning that she swept his feet out from under him and he fell back to the curb, bracing himself with his handcuffs. While leaning back with his knee bent, Smith kicked Officer Pennington in the right knee, causing her knee to buckle, and causing her pain. Smith then

3

began flailing his legs, forcing Officer Klonne to zip-tie his ankles together in order to restrain him.

As a result of this incident, Smith was charged with operating a vehicle while intoxicated, battery, and resisting law enforcement. He was convicted as set out above following a bench trial.

Smith contends the evidence was not sufficient to support his convictions. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Thang v. State*, 10 N.E.3d 1256 (Ind. 2014). We consider only "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* at 1258 (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). We will affirm a conviction "if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* A verdict of guilt may be based upon an inference that is reasonably drawn from the evidence. *Thang v. State*, 10 N.E.3d 1256. All inferences are viewed in a light most favorable to the conviction. *Bailey v. State*, 979 N.E.2d 133 (Ind. 2012).

In order to convict Smith of battery as a class D felony as charged, the State was required to prove that he knowingly or intentionally touched Officer Pennington in a rude, insolent, or angry manner while she was engaged in her official duties, causing her bodily injury. *See* I.C. § 35-42-2-1. The State presented evidence that Smith kicked Officer Pennington in the knee after threatening to "kick [her] ass." *Transcript* at 47. The blow

4

was delivered with enough force that it caused her knee to buckle and it caused pain. This was sufficient to establish all of the elements of battery as a class D felony. Smith argues upon appeal that the evidence indicates that he did not intentionally kick Officer Pennington, but instead that his foot inadvertently made contact with her knee when she swept his feet out from under him and he fell backward. Smith's attorney offered this theory during cross-examination of Officer Pennington, asking her several times if it was possible that his contact with her knee was an accident. She responded, "[g]iven your scenario, yes." *Id.* at 61. "Your scenario" in this context referred to a hypothetical situation proposed by defense counsel. The trial court obviously rejected the possibility that the kick was inadvertent and we will not second-guess that decision, which was the trial court's to make.

Smith was convicted under I.C. § 9-30-5-2, which provides: "(a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor. (b) An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person." In pertinent part, Ind. Code App. § 9–13–2–86 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) defines intoxication as under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." "Impairment can be established by evidence of the following: '(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4)

5

the odor of alcohol on the breath; (5) unsteady balance; and (6) slurred speech.'" *Outlaw v. State*, 918 N.E.2d 379, 381 (Ind. Ct. App. 2009), *opinion adopted,* 929 N.E.2d 196 (Ind. 2010) (quoting *Fought v. State,* 898 N.E.2d 447, 451 (Ind. Ct. App. 2008)).

The officers at the scene testified that Smith had bloodshot eyes, slurred speech, and lacked balance. Moreover, the odor of alcohol emanated from Smith and he was found with a half-empty pint bottle of tequila in his pocket. This evidence was sufficient to prove that he was intoxicated. As for endangerment, Officer Klonne testified that while driving at a high rate of speed, Smith ran through two red lights and had to swerve to avoid colliding with a vehicle. Smith offers no authority for his main arguments on this conviction – i.e., that the failure to administer field-sobriety and BAC tests is fatal to his conviction.[4] The evidence cited above was sufficient to prove that Smith endangered a person while operating the vehicle in the manner that he did.

Finally, in order to convict Smith of resisting law enforcement, the State was required to prove that he knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of his or her duties. *See* I.C. § 35-44.1-3-1(a)(1). A person "forcibly resists" law enforcement when "strong, powerful, violent means are used to evade a law

---

[4] Moreover, it is not accurate to say that the officers did not administer field-sobriety tests at the scene of the arrest. Officer Klonne testified that he attempted to administer a field-sobriety test but Smith refused to cooperate, stating, "I'm not going to take these tests." *Transcript* at 18.

6

enforcement official's rightful exercise of duties." *Spangler v. State,* 607 N.E.2d 720, 723 (Ind. 1993).

Smith refused to obey Officer Pennington's command to remain seated on the curb. As a result, Officer Pennington performed a sweep-kick in order to make Smith sit back down on the curb. Smith kicked Officer Pennington in the knee after she did so, causing her knee to buckle. Our Supreme Court has acknowledged that there is no strict, bright-line test for determining whether a defendant acts "forcibly." Rather, we must consider the facts of each case and then place them "along a spectrum of force, though often with the facts varying only by slight degrees." *Id.* at 727. In the present case, Smith kicked one officer and then flailed his legs with such force that officers were required to zip-tie his legs together in order to subdue him. These facts were easily sufficient to establish that Smith forcibly resisted the officers. The evidence was sufficient to sustain Smith's convictions.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.