# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 17 2018, 10:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Victoria Bailey
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sylvanus Paelay, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 17, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-387 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable <br> David Hooper, Magistrate <br><br> Trial Court Cause No. <br> 49G08-1612-CM-48808 |

**Kirsch, Judge.**

[1] Sylvanus Paelay ("Paelay") was convicted following a jury trial of two counts of resisting law enforcement,[1] each as a Class A misdemeanor. The trial court merged the two convictions and imposed a one-year sentence, fully suspended. Paelay now appeals and argues that the State did not present sufficient evidence to prove that he forcibly resisted law enforcement.

[2] We affirm.

## Facts and Procedural History

[3] Late in the evening on December 25, 2016, Paelay was at a banquet hall, attending a holiday event of the Liberian Men's Association, a social and philanthropic group. Members of the community were invited to the event, which had a $50.00 entrance fee. According to the party's organizer, Wellington Draper ("Draper"), Paelay was "let in" without paying. *Tr. Vol. II* at 19. Paelay began insulting and cussing at other attendees of the event, and Draper asked the hired security officer, Japhia Johnson ("Johnson"), to talk with Paelay. Johnson did so, and Paelay "quieted down." *Id*. at 21. Thereafter, Paelay began to "act up" again, and Johnson called the police, asking that Paelay be removed from the premises. *Id*. When an Indianapolis Metropolitan Police Department ("IMPD") officer arrived at the scene, he was

---

[1] *See* Ind. Code § 35-44.1-3-1(a)(1).

advised that Paelay had calmed down and was permitted to stay, so the officer left.

[4] Almost immediately, Paelay began to insult other attendees again. After a short while, Johnson called the police again, and IMPD Officer Aaron Trotter ("Officer Trotter") arrived first, followed shortly thereafter by Officer Ricardo Flores ("Officer Flores") and two other officers. Draper confirmed to Officer Trotter that he wanted Paelay to leave the premises. In an attempt to resolve the situation, Officer Trotter gave Paelay's step-father an opportunity to speak with Paelay about leaving on his own, and Officer Trotter stood nearby. Officer Trotter saw Paelay shake his head "no" and gesture "as if to say no" with his arms. *Id*. at 55. Officer Trotter, believing that Paelay likely was not going to leave on his own accord, spoke to Officer Flores to advise him of the status of the situation.

[5] The two officers approached Paelay, and Officer Trotter spoke to Paelay briefly and then grabbed his left arm, while Officer Flores took his right arm; Paelay "immediately went rigid." *Id*. at 56-57. When Paelay did this, the officers "took him to the ground." *Id*. at 57. Once Paelay was on the ground, he refused to give officers his right arm for handcuffing, and it took three officers "to sweep his arm around" and handcuff Paelay. *Id*. Officers walked Paelay outside and ultimately placed Paelay in leg shackles because he attempted to get to his knees and stand up. *Id*. at 77-78.

[6] On December 26, 2016, the State of Indiana charged Paelay with two counts of Class A misdemeanor resisting law enforcement. *Appellant's App. Vol. II* at 20. In January 2018, the State requested and received permission to amend the information by adding a count of Class A misdemeanor criminal trespass. *Id*. at 55. A jury trial was held in February 2018.

[7] At trial, Draper testified that Paelay was "intoxicated" when he first arrived, and, while inside the hall, Paelay was cussing at and insulting people and causing a disturbance. *Tr. Vol. II* at 20, 23-24. Drayer told the bartender "to cut down" on serving Paelay and told Johnson, the security officer, to "keep an eye on him." *Id*. at 20-21. Draper testified that Johnson called the police twice due to Paelay's behavior. Draper said that Paelay "caused a disruption" to the event. *Id*. at 24. Draper did not observe the actual arrest, but he said he saw Paelay sitting outside on the ground in handcuffs and described that Paelay was cussing and yelling and "not cooperating with the police." *Id*. at 30.

[8] Johnson testified that about fifteen to twenty minutes after Paelay was allowed to enter, Draper came to her and said that Paelay "must go" because he was "arguing and causing problems." *Id*. at 35. She said that Paelay was intoxicated, and she observed him "falling over" and "in people's face yelling[.]" *Id*. She attempted to have him walk outside with her to "cool down," but he refused. *Id*. When the first officer arrived, she told him that Paelay was "being very belligerent" and appeared intoxicated, but then told the officer that he could leave, and that Paelay could stay, because Paelay's step-father and Draper had assured her that they could make Paelay behave. *Id*. at

37. However, shortly after that officer left, Paelay continued "picking arguments and fights" with "a lot of people[,]" so Johnson eventually called the police again. *Id*. 38. She observed the officers arrive and said that one officer asked Paelay to step outside, and Paelay said, "[F]*ck you and pulled away from the police officer." *Id*. at 41. Johnson said more officers came and "tried to get ahold of [Paelay]," and he "kept bucking and f[l]ailing his arms trying to get away." *Id*. at 42. She said they lowered him to the ground and handcuffed him, and walked him outside, "although he kept cussing and carrying on." *Id*. She described that, while outside, Paelay "was jerking, trying to get them away from him[.]" *Id*. Johnson followed officers and Paelay outside, and she said that Paelay "was screaming and yelling, telling them to get their hands off of him, trying to kick. He just was out of control." *Id*. at 43. She observed officers putting shackles on his legs, as Paelay was cursing, name calling, and "just going crazy." *Id*.

[9]     Officer Trotter testified and described that that there are two different types of resistance:

> [T]here's passive which is their [sic] not fighting you but they're not doing what you're telling them to do. And then active resistance which is where they're actually fighting. When someone goes rigid that's passive resistance. But it's a red flag for us because it means that they're likely about to try to fight you.

*Id.* at 56. Officer Trotter considered Paelay's action of becoming rigid to be passive resistance. *Id*. When Paelay stiffened, the two officers took Paelay to

the ground; Paelay "was refusing to give us his right arm so we gave him several verbal commands" to "stop resisting." *Id*. at 57. Officer Trotter estimated that it took the officers approximately thirty seconds to handcuff Paelay, while a typical arrest takes "like two seconds" if "someone is just putting their hands behind their back." *Id*. at 58. After Paelay was handcuffed and escorted outside, Officer Trotter said that officers "did eventually have to shackle [Paelay]" because he was kicking or attempting to stand up. *Id*. at 59.

[10] Officer Flores testified that, after he arrived at the premises, Officer Trotter advised him of the situation, telling Officer Flores that Paelay needed to be removed and that Paelay "might be uncooperative." *Id*. at 73. Officer Flores said that they approached Paelay and that each grabbed an arm. Paelay "went stiff" and "tensed up his arms to the point to where he was what we would consider resisting." *Id*. at 75. Officer Flores said that Paelay would not give the officers his right arm, and they were giving "loud, verbal commands" to "stop resisting" and giving him instructions to put his hands behind his back. *Id*. at 76. Officer Flores said that Paelay was "yelling f*ck you" and "calling us a**holes." *Id*. at 77. While outside, Paelay "kept trying to get to his knees and stand up." *Id*. at 78. Officer Flores stated that, after Paelay was in shackles, "he kept trying to roll to his side and stand up." *Id*.

[11] At the conclusion of the evidence, the jury found Paelay guilty of the two counts of resisting law enforcement and not guilty of the criminal trespass charge. *Tr. Vol. II* at 95; *Appellant's App. Vol. II* at 16-17. The trial court merged the two convictions. *Tr. Vol. II* at 96; *Appellant's App. Vol. II* at 16-17.

Following a sentencing hearing, the trial court sentenced Paelay on February 12, 2018, to one year of incarceration, with credit for eight days, and with the remaining three hundred fifty-seven days suspended to probation. Paelay now appeals.

## Discussion and Decision

[12] Paelay contends that the State failed to present sufficient evidence to convict him of resisting law enforcement. When reviewing a conviction for the sufficiency of the evidence, we do not reweigh evidence or reassess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction and will affirm "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id*. (quoting *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004)).

[13] To convict Paelay of resisting law enforcement as charged, the State was required to prove that he: (1) knowingly or intentionally (2) forcibly (3) resisted, obstructed, or interfered (4) with a law enforcement officer (5) while the officer was lawfully engaged in the execution of the duties. Ind. Code § 35-44.1-3-1(a)(1). Our Supreme Court has clarified, "[T]he word 'forcibly' is an essential element of the crime and modifies the entire string of verbs—resists, obstructs, or interferes—such that the State must show forcible resistance, forcible obstruction, or forcible interference." *Walker*, 998 N.E.2d at 726 (citing

*Spangler v. State*, 607 N.E.2d 720, 722-23 (Ind. 1993)). "'[A]ny action to resist must be done with force in order to violate [the] statute.'" *Id.* at 727 (quoting *Spangler*, 607 N.E.2d at 724). However, the force "need not rise to the level of 'mayhem[,]'" and "even a very 'modest level of resistance' might support the offense." *Id.* (quoting *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009)).

[14] On appeal, Paelay argues that the evidence fails to prove that he "acted forcibly toward Officers Trotter and Flores as charged . . . or interfered with the officers' execution of their duties." *Appellant's Br.* at 8-9. His position is that his "reaction during the encounter of stiffening his body when the officer grabbed his arms shows no 'force[.]'" *Id.* at 10. We disagree.

[15] Our Supreme Court has recognized that "'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice" to constitute forcible resistance. *Graham*, 903 N.E.2d at 966; *see also Johnson v. State*, 833 N.E.2d 516, 517 (Ind. Ct. App. 2005) (holding that defendant who "stiffened up" as police were attempting to put him in police vehicle, requiring police to physically place him inside it, used forcible resistance). Furthermore, the evidence showed that, here, Paelay did more than only stiffen his arms. Johnson, the security guard, observed that, as officers "tried to get ahold of [Paelay]," he "kept bucking and f[l]ailing his arms trying to get away." *Tr. Vol. II* at 42.

[16] After Paelay stiffened his arms, Officers Trotter and Flores physically took Paelay to the ground. Paelay then refused to give the officers his right arm for

handcuffing, and he ignored loud, verbal commands to stop resisting and to put his hands behind his back. It took three officers "to sweep his arm around" in order to handcuff Paelay. *Id.* at 57. After officers were able to handcuff Paelay and escort him outside, they sat him on the ground, but he was kicking and kept trying to get to his knees and stand up. Johnson described Paelay as being "out of control." *Id.* at 43. Officer Flores recalled that, after the officers shackled him, Paelay "kept trying to roll to his side and stand up." *Id.* at 78.

[17]  "[A] person 'forcibly' resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties[,]" and the "forcibly" element "may be satisfied with even a modest exertion of strength, power, or violence." *Walker*, 998 N.E.2d at 727. Here, the record before us reflects that Paelay exerted well more than "modest" strength, power, or violence as Officers Trotter and Flores attempted to handcuff him. Accordingly, sufficient evidence supported his two convictions for resisting law enforcement.

[18]  Affirmed.

Vaidik, C.J., and Riley, J., concur.