## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 02 2018, 8:59 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D'Andre Lee Goodwin, Jr., <br> *Appellant-Defendant,* <br><br> *v.* <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 2, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-1335 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Kristine Osterday, Judge <br><br> Trial Court Cause No. <br> 20D01-1602-F1-1 |

**Bradford, Judge.**

# Case Summary

In March of 2015, D'Andre Goodwin, Jr., and A.M. were both incarcerated in the Elkhart County Jail when Goodwin became aware that a relative of A.M.'s had been involved in Goodwin's arrest. Goodwin told A.M. that he was going to kill the relative and A.M.'s family. A couple of weeks later, Goodwin approached A.M., told A.M. to fellate him, and said that A.M. knew what would happen if he refused. A.M. complied out of fear for his relatives. The State charged Goodwin with Level 1 felony rape, and a jury found him guilty as charged. Goodwin contends that the State produced insufficient evidence to sustain his conviction. Because we disagree, we affirm.

# Facts and Procedural History

In early March of 2015, A.M. was incarcerated in the Elkhart County Jail. A.M. was in the same "pod" as Goodwin and six others, and everyone in the pod got along well until Goodwin found out that A.M. was related to the officer who had arrested him, Elkhart Police Detective Bryan Schroth. Goodwin began threatening A.M.'s family in general and Detective Schroth in particular, telling A.M. that he was going kill his family, attach a bomb to Detective Schroth's car, and "go American Gangster on him." Tr. Vol. II p. 128. American Gangster is a film in which a character "did some really screwed up stuff, I mean, flaying people alive." Tr. Vol. II p. 128. A.M. took these threats seriously, in part because he believed Goodwin to be affiliated with the gang "the Folks[,]" which, in turn, is allegedly affiliated with the

"Gangster Disciples." Tr. Vol. II p. 130. A.M. believed that if Goodwin "had enough pull then yeah, they very well could die." Tr. Vol. II p. 131. A.M. did not immediately report the threats out of fear.

[3] "[A] couple weeks" later, Goodwin and A.M. were alone in their bunk room when Goodwin walked over, "dropped his pants, [and] told [A.M.] to suck his d[***.]" Tr. Vol. II p. 135; Vol. III p. 19. Goodwin told A.M. that he had to fellate him or he "knew what would happen" and that he "'kn[e]w what [he] had to do.'" Tr. Vol. II pp. 139, 199. A.M. did not resist because he was "scared for [his] family" and "worried about [his] cousins." Tr. Vol. III p. 23. After Goodwin ejaculated and left to take a shower, A.M. "climbed under [his] covers and cried[,]" feeling "terrified [and] ashamed." Tr. Vol. II p. 140. Approximately two weeks later, A.M. reported the incident to his mother during a video call, and she reported it to A.M.'s attorney, who contacted the authorities.

[4] On January 29, 2016, the State charged Goodwin with Level 1 felony rape. On April 19, 2018, the jury found Goodwin guilty as charged. On May 11, 2018, the trial court sentenced Goodwin to thirty years of incarceration, with five years suspended to probation.

# Discussion and Decision

[5] Goodwin contends that the State produced insufficient evidence to sustain his conviction for Level 1 felony rape. When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility.

*Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id*. If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993).

[6] In order to convict Goodwin of Level 1 felony rape, the State was required to establish that he "knowingly or intentionally cause[d A.M.] to perform or submit to [an act involving … a sex organ of one (1) person and the mouth … of another person] by using or threatening the use of deadly force[.]" Ind. Code §§ 35-42-4-1; 35-31.5-2-221.5. Goodwin contends that the State failed to produce evidence sufficient to establish that his threats to A.M. were "imminent." Although the State argues that there is no statutory requirement that the State prove that the threats were imminent, we leave that question for another day, because even if the State was required to establish that the threats were imminent, it produced sufficient evidence to do just that.

[7] The Indiana Supreme Court has held that "[i]t is sufficient if the threat of deadly force is imminent enough to cause the victim to submit to the aggressor." *Pennington v. State*, 523 N.E.2d 414, 415–16 (Ind. 1988). A.M. testified that while he did not want to fellate Goodwin, Goodwin told him that he had to or he "knew what would happen" and that he submitted to him out of fear that he would kill (or cause to be killed) his family and cousins. Even though Goodwin did not reiterate his previous threats against A.M.'s relatives,

he reminded A.M. that they were still in full force, causing him to submit. This is sufficient evidence to support a finding that Goodwin's threats were "imminent."

[8] Goodwin also argues that the threats he made against A.M.'s relatives cannot sustain his conviction because there was insufficient evidence to establish that he had the ability to follow through. The question, however, is not whether Goodwin had the ability to make good on his threats, it is whether they caused A.M. to perform fellatio on him, and there is sufficient evidence to establish that they did. A.M. testified that he believed Goodwin had the ability to harm his relatives due to his alleged gang affiliation and, as mentioned, that he submitted to Goodwin's demand out of fear for their safety. We conclude that the State produced sufficient evidence to sustain Goodwin's conviction for Level 1 felony rape.

[9] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.