

FILED

Nov 20 2023, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Alexandria N. Sons
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Couch,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 20, 2023

Court of Appeals Case No.
23A-CR-972

Appeal from the Marion Superior
Court

The Honorable William J. Nelson,
Judge

Trial Court Cause No.
49D18-2211-CM-31898

**Opinion by Judge Mathias**
Judges Riley and Crone concur.

**Mathias, Judge.**

[1] John Couch appeals his conviction for Class A misdemeanor resisting law enforcement following a bench trial. He presents a single issue for our review, namely, whether the State presented sufficient evidence to support his conviction.

[2] We reverse.

## Facts and Procedural History

[3] On November 27, 2022, Couch was home with his five dogs when Caitlin Batchlor, an animal control officer for the City of Indianapolis, knocked on the door of Couch's home. One of Couch's dogs had been hit by a car the day before, and Batchlor was checking on the dog's welfare. Couch had had previous interactions with animal control, and he was angry that Batchlor was there. An officer with the Indianapolis Metropolitan Police Department ("IMPD") accompanied Batchlor.

[4] Couch "yelled" at Batchlor and the officer "to get off his property," so they moved to the sidewalk. Tr. p. 21. Batchlor was trying to ask Couch whether the dog had been seen by a veterinarian, but Couch yelled over her. Couch eventually retrieved some records from his visit to the veterinary clinic the day before and showed them to Batchlor. The records "indicated that [Couch] did not actually obtain any care for [the dog]. [The veterinarian] did the basic assessment and then [Couch] was given prescription medications," but he had not obtained the medications. *Id.* at 22. Batchlor asked to see the dog, and

Couch carried her outside for Batchlor to see her. At that time, two of Couch's other dogs ran outside.

[5] Batchlor examined the injured dog and could see that she "did not appear well." The injured dog "could not walk[.]" *Id.* In addition to the prescription medications, the dog was also in need of "proper care" for a possible fractured pelvis. *Id.* Batchlor took photographs of the veterinary records and gave them back to Couch. Batchlor told the IMPD officer that she was going to apply for a warrant "to remove the dogs" from Couch's care, and they left. *Id.* at 23.

[6] Batchlor obtained a search warrant later that morning, and she returned to Couch's home with other animal control officers as well as four IMPD officers. When they executed the warrant, Couch was "irate" and "confrontational[.]" *Id.* at 25, 31. Couch stated that the dogs were "service dogs" and he yelled at the officers. *Id.* at 25. Couch asked to speak to a "supervisor," and IMPD Officer Conrad Simpson told him that Sergeant Gregory "was already here." *Id.* at 32. Couch then pointed at Sergeant Gregory and said, "I've always had a problem with you." *Id.* Couch then "charged over in Sergeant Gregory's direction" as though he were going to "initiate a physical confrontation." *Id.* Before he reached Sergeant Gregory, however, officers intervened and attempted to place handcuffs on Couch.

[7] Officer Simpson struggled to get the handcuffs on Couch, even with the assistance of other officers. Couch "tried to pull away," and the officers pinned him against a truck. *Id.* at 33. Couch "had his left arm pulled up in front of

him" as he was pinned against the truck, and he "tr[ied] to pull it away from [Officer Simpson] to try to keep [him] from gaining control of his arm." *Id.* at 34. Couch "twisted and turned" while the officers attempted to handcuff him. *Id.* at 36. The officers were ultimately successful in securing Couch in handcuffs, and the animal control officers removed all five dogs from Couch's home.

[8] The State charged Couch with Class A misdemeanor resisting law enforcement and Class B misdemeanor disorderly conduct. During a bench trial on April 3, 2023, Couch moved to dismiss the charges. The trial court denied that motion with respect to the resisting law enforcement charge but dismissed the disorderly conduct charge. The trial court found Couch guilty of Class A misdemeanor resisting law enforcement, entered judgment of conviction, and sentenced Couch to 365 days, all suspended. This appeal ensued.

## Discussion and Decision

[9] Couch contends that the State presented insufficient evidence to support his conviction. Our standard of review is well settled.

> When an appeal raises "a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of the witnesses . . . ." We consider only the probative evidence and the reasonable inferences that support the verdict. "We will affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'"

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018) (quoting *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011)).

[10] To convict Couch of Class A misdemeanor resisting law enforcement, the State had to prove he knowingly or intentionally forcibly resisted, obstructed, or interfered with Officer Simpson while he was lawfully executing his duties. I.C. § 35-44.1-3-1(a)(1). Couch argues that, while he "was being argumentative" with officers, "he did not use force to resist." Appellant's Br. at 16. We must agree.

[11] As we very recently explained,

> [a] person forcibly resists law enforcement when "'strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.'" *Walker v. State*, 998 N.E.2d 724, 726-27 (Ind. 2013) (quoting *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993)). Even a modest exertion of strength, power, or violence may satisfy this element, *id.* at 727, but our Supreme Court has held that merely walking away from law enforcement, *Spangler*, 607 N.E.2d at 724, refusing to present arms for handcuffing, *Graham v. State*, 903 N.E.2d 963, 966 (Ind. 2009), or turning and pulling away from an officer's grasp, *K.W. v. State*, 984 N.E.2d 610, 611 (Ind. 2013), do not rise to the level of forcible resistance. *See also*, *e.g.*, *Runnells v. State*, 186 N.E.3d 1181, 1185 (Ind. Ct. App. 2022) ("pulling away from [the officer's] grasp"); *Brooks v. State*, 113 N.E.3d 782, 785 (Ind. Ct. App. 2018) ("tensing up and pulling away" as officers tried to handcuff her).

*Denney v. State*, No. 23A-CR-523, 2023 WL 6471161, at *3 (Ind. Ct. App. Oct. 5, 2023).

[12] Here, Couch attempted to pull away from officers, resisted efforts to move his left arm from in front of his body to the back of his body, and "twisted and turned" in a struggle with Officer Simpson. Tr. p. 36. But the evidence does not show that Couch used even "a modest exertion of strength, power, or violence" in those actions. *See Denney*, 2023 WL 6471161, at *3. In fact, Officer Roberto DeJesus testified that, when Officer Simpson attempted to place Couch into handcuffs, Couch "kind of passive[ly] resist[ed] and flared up his arms" in an attempt to avoid being arrested. Tr. p. 40. We hold that the State did not prove that Couch acted forcibly when he resisted arrest, and the evidence is, therefore, insufficient to sustain his conviction for resisting law enforcement.

[13] Reversed.

Riley, J., and Crone, J., concur.