

FILED
Apr 27 2015, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Swaray E. Conteh
The Law Office of Swaray Conteh, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# I N T H E
# COURT OF APPEALS OF INDIANA

Adegoke Adetokunbo
aka Robert Adesanoye,
and Grace Itaniyi,

*Appellants-Defendants,*

v.

State of Indiana,

*Appellee-Plaintiff,*

April 27, 2015

Court of Appeals Cause No.
49A02-1407-CR-511

Appeal from the Marion Superior
Court

The Honorable Amy Jones, Judge

Trial Court Case Nos.
49F08-1311-CM-76490
49F08-1311-CM-76491

**Robb, Judge.**

# Case Summary and Issues

[1] A bench trial was held for Adegoke Adetokunbo and Grace Itaniyi, who were
tried as codefendants. Adetokunbo was found guilty of resisting law

enforcement, a Class A misdemeanor, and battery, a Class B misdemeanor. Itaniyi was found guilty of resisting law enforcement, a Class A misdemeanor, battery, a Class B misdemeanor, and disorderly conduct, a Class B misdemeanor. Following their convictions and sentence, Adetokunbo and Itaniyi appealed jointly, challenging the sufficiency of evidence supporting their convictions. We conclude there was insufficient evidence to support Itaniyi's conviction for battery, and we remand with instructions that that conviction be vacated. However, we conclude that Itaniyi and Adetokunbo's remaining convictions are supported by sufficient evidence and must be affirmed.

# Facts and Procedural History

[2] The facts most favorable to the judgment are as follows. On November 27, 2013, Adetokunbo received a phone call from the Indiana Department of Child Services ("DCS") requesting that he come to the agency's local office and bring his youngest child. Adetokunbo and Itaniyi, the child's mother, took their child to the DCS office and met with a caseworker who informed them that DCS had received information about possible child abuse and that DCS needed to remove the child from their care.

[3] When the parents were told that DCS was taking their child, Itaniyi became agitated and soon began screaming: "You're not taking my child. You better kill me before you take my child away from me." Transcript at 13. At that point, Luis Flores, a security guard working in the DCS office, called the Indianapolis Metropolitan Police Department and requested an officer's

assistance. Flores prevented Adetokunbo and Itaniyi from leaving, and Officer Perry Renn arrived to assist with removal of the child.

[4] Officer Renn approached Itaniyi and told her that she needed to hand her child over to DCS. Itaniyi, who was seated and calm when Officer Renn first approached, refused to give up her child, and she quickly became loud and agitated once again. Itaniyi told Officer Renn that if he wanted to take her child then he would have to arrest her. Officer Renn stepped forward to take the child from Itaniyi, but she pushed him away. Adetokunbo then stood up and started coming toward Officer Renn. Flores stepped between Adetokunbo and Officer Renn, and Adetokunbo punched Flores in the face, knocking off Flores's glasses.

[5] Officer Renn turned to help Flores. Officer Renn approached Adetokunbo and tried to handcuff him, but Adetokunbo pulled his arms away and backed away from Officer Renn. Adetokunbo refused to give Officer Renn his hands, and Officer Renn and Flores had to take Adetokunbo to the ground to subdue him. Once on the ground, Adetokunbo held his arms out in front and stiffened them, making it difficult for Officer Renn to pull Adetokunbo's arms behind his back to handcuff them.

[6] After finally handcuffing Adetokunbo, Officer Renn returned to Itaniyi, who was now screaming. At this time, several people had emerged from their offices to observe the commotion. Officer Renn asked Itaniyi to be quiet multiple times, but she did not comply and continued yelling. Officer Renn placed

Itaniyi in handcuffs and placed her on the floor. Once on the floor, Itaniyi continued to yell and attempted to kick Officer Renn. To stop Itaniyi from kicking Officer Renn and Flores, Officer Renn also had to put handcuffs on Itaniyi's feet. Itaniyi did not cease yelling until she was taken outside and put into a police vehicle.

[7] On November 28, 2013, the State charged Adetokunbo with resisting law enforcement, a Class A misdemeanor, and battery, a Class A misdemeanor. The same day, the State charged Itaniyi with resisting law enforcement, a Class A misdemeanor; battery, a Class B misdemeanor; and disorderly conduct, a Class B misdemeanor. A bench trial was held, at which Adetokunbo and Itaniyi were tried as codefendants. Adetokunbo was found guilty of resisting law enforcement as a Class A misdemeanor and battery as a Class B misdemeanor.[1] Itaniyi was found guilty of all three counts as charged. Both Adetokunbo and Itaniyi were sentenced to aggregate terms of 365 days with 361 days suspended to probation. This appeal followed.

---

[1] The trial court granted Adetokunbo's motion for judgment on the evidence as to the charge of battery as a Class A misdemeanor, concluding the State did not present sufficient evidence that Flores experienced pain as a result of the battery.

# Discussion and Decision

## I. Standard of Review

When reviewing a defendant's claim of insufficient evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Id.* A conviction will be affirmed "if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.*

## II. Itaniyi's Convictions

### A. Resisting Law Enforcement

First, Itaniyi argues that there was insufficient evidence that she committed the crime of resisting law enforcement. "A person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement . . . ." Ind. Code § 35-44.1-3-1(a)(1). The term "forcibly" is a distinct element of the offense that modifies all three verbs "resists, obstructs, or interferes." *See K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013) (citing *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993)). Forcible resistance includes "at a minimum, some physical interaction with a law enforcement officer." *Macy v. State*, 9 N.E.3d 249, 253 (Ind. Ct. App. 2014). Forcible resistance may be said to occur when a "threatening gesture or

movement . . . presents an imminent danger of bodily injury [to an officer]." *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013) (holding there was sufficient evidence of forcible resistance where defendant aggressively advanced toward a police officer with his fists clenched after being ordered to lay on the ground).

[10] The State contends that Itaniyi's act of attempting to kick Officer Renn after she was handcuffed is sufficient to constitute an act of forcible resistance. Although Itaniyi never actually kicked Officer Renn, her conduct could nonetheless be construed as a threatening gesture that presented an imminent danger of injury to Officer Renn. *See id.* Considering the evidence most favorable to the trial court's decision, we must conclude there was sufficient evidence to support Itaniyi's conviction for resisting law enforcement.

## B. Battery

[11] Second, Itaniyi argues the evidence is insufficient to support her conviction for battery as a Class B misdemeanor. "[A] person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor." Ind. Code § 35-42-2-1(b)(1). "Evidence of touching, however slight, is sufficient to support a conviction for battery." *Ball v. State*, 945 N.E.2d 252, 258 (Ind. Ct. App. 2011), *trans. denied*.

[12] As to the battery count, the charging information stated in relevant part: "On or about 11/27/2013, in Marion County, State of Indiana, . . . Grace Itaniyi did knowingly touch *Luis Flores* . . . in a rude, insolent or angry manner." Appellants' Appendix at 10 (emphasis added). Itaniyi claims that there was no

evidence whatsoever that she touched Flores. Our own review of the record confirms that the State failed to present any evidence that Itaniyi made any contact with Flores.[2]

[13] The State notes that although no evidence was presented to prove a battery against Flores, there was testimony that Itaniyi pushed Officer Renn. Thus, we are presented with an issue of variance. A "variance" is a difference between the pleading and proof at trial. *Allen v. State*, 720 N.E.2d 707, 713 (Ind. 1999). Not all variances are material—or "fatal"—and thus not all variances require reversal. *Id.*

[14] The State asserts—without citation to authority—that to convict a defendant of battery against a person other than the victim named in the charging information amounts to an immaterial variance. We cannot agree. "The names of third persons who are only incidentally or collaterally connected with the offense charged against an accused need not be stated in an affidavit or indictment." *Evans v. State*, 181 Ind. App. 687, 690, 393 N.E.2d 246, 247 (1979). But it has long been held in Indiana that "as a general rule the name of one injured in his person or property, by the act of the accused, or the name of one whose identity is essential to a proper description of the offense charged should be alleged if known . . . ." *Robinson v. State*, 232 Ind. 396, 398, 112

---

[2] The only exception was testimony from Officer Renn that Flores told him Itaniyi had kicked him, but that statement was excluded on hearsay grounds. Tr. at 35. Flores testified that Itaniyi was kicking while on the ground but did not make contact with him. Tr. at 21.

N.E.2d 861, 862 (1953) (holding indictment for securities fraud was insufficient where it did not name the victim to whom securities were allegedly improperly sold); *see also Padgett v. State*, 167 Ind. 179, 78 N.E. 663, 665 (1906) (stating "the name of the injured party is an essential element in the description of a public offense, and the failure to disclose who such person was . . . is a fatal omission" and holding "there can be no sufficient charge of an assault and battery . . . without giving or stating, if known, the name of the injured person . . . ."); *McFarland v. State*, 154 Ind. 442, 56 N.E. 910, 911 (1900) (holding defendant's rape conviction must be reversed for failure of proof where the charging information named "Laura Van Buskirk as the alleged victim" but the State offered proof of a rape victim named "Lillie").

[15] To be clear, not *all* variances involving a victim's identity are fatal. For instance, in *Kokenes v. State*, the charging information named "Robert James" as the robbery victim, but the victim testified that his real name was "Richard C. James, but that he is some times known as Robert James." 213 Ind. 476, 492, 13 N.E.2d 524, 531 (1938). The court held that the variance was not fatal because it was not likely to mislead the defendant as to whom he allegedly robbed. *Id.* at 492-93. Obviously, this case is quite different from *Kokenes*, because the charging information here identified a different victim entirely, not the correct victim by way of a nickname. Moreover, we note that decisions such as *Parahams v. State*, 908 N.E.2d 689, 691-93 (Ind. Ct. App. 2009) and *Jones v. State*, 938 N.E.2d 1248, 1251-53 (Ind. Ct. App. 2010), which held that naming the wrong law enforcement officer in the charging information was an

immaterial variance, can be distinguished—if necessary—on the basis that both involved *fleeing* law enforcement, which is not a crime that implicates a victim "injured in his person," *see Robinson*, 232 Ind. at 398, 112 N.E.2d at 862.[3]

[16] In sum, the State presented insufficient evidence to prove Itaniyi committed a battery against Flores. We conclude that any variance resulting from evidence that Itaniyi committed a different battery against another victim is a material, fatal variance under Indiana Supreme Court precedent, and the State's argument to the contrary is unconvincing. Therefore, Itaniyi's conviction for battery as a Class B misdemeanor must be reversed and vacated.

## C. Disorderly Conduct

[17] Third, Itaniyi challenges the evidence supporting her conviction for disorderly conduct as a Class B misdemeanor. To convict Itaniyi of that offense, the State was required to prove beyond a reasonable doubt that she "recklessly, knowingly, or intentionally . . . [made] unreasonable noise and continue[d] to do so after being asked to stop . . . ." Ind. Code § 35-45-1-3(a)(2).

[18] Itaniyi argues that the trial court's decision concerning disorderly conduct was based on "speculation." Brief of Appellants at 13. But the evidence shows that Itaniyi was yelling and screaming throughout much of the ordeal, despite being

---

[3] We also observe that neither *Parahams* nor *Jones* acknowledges a general rule that the State's charging information must include the name of the victim or any person whose identity is essential to a proper description of the offense.

asked by Officer Renn to be quiet "five or ten times." Tr. at 34. Itaniyi's yelling was loud enough to be heard from another room and to draw other DCS workers out of their offices to investigate. She suggests that her noise level was not "unreasonable" under the circumstances, but that argument essentially amounts to a request that we reweigh the evidence, which we will not do. We conclude there was sufficient evidence for the trial court to find Itaniyi guilty of disorderly conduct.

## III. Adetokunbo's Convictions

### A. Resisting Law Enforcement

Adetokunbo claims the State presented insufficient evidence that he resisted law enforcement. We disagree.

Officer Renn testified that when he attempted to handcuff Adetokunbo, he pulled his arms away and backed away from Officer Renn. Because he would not cooperate, Officer Renn and Flores had to bring Adetokunbo to the ground. Once on the floor, Adetokunbo held his arms out stiff in front of him to prevent Officer Renn from handcuffing him.

Our supreme court has said that for the purposes of showing forcible resistance, "'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice . . . ." *Graham v. State*, 903 N.E.2d 963, 966 (Ind. 2009). According to Officer Renn's trial testimony, that is precisely what Adetokunbo did. Therefore, we must find there was sufficient evidence to uphold his conviction for resisting law enforcement.

## B. Battery

[22] Finally, Adetokunbo argues there was not sufficient evidence to find him guilty of battery as a Class B misdemeanor. In Adetokunbo's words, "[o]ther than the claim that Adetokunbo took a swing at Flores and hit him on the face, no evidence was introduced that the touching was 'rude, insolent or in an angry manner.'" Br. of Appellants at 21. But frankly, Adetokunbo's act of punching Flores in the face and knocking off his glasses is a classic example of a rude touching that our battery statute is meant to penalize. *See, e.g., Impson v. State*, 721 N.E.2d 1275, 1285 (Ind. Ct. App. 2000) (holding that slapping glasses off the victim's face was sufficient to support battery conviction); *Greene v. State*, 670 N.E.2d 38, 39 (Ind. Ct. App. 1996) (holding that punching victim in jaw and neck was sufficient to support battery conviction), *trans. denied*. We therefore conclude the evidence is sufficient to support Adetokunbo's battery conviction.

# Conclusion

[23] We conclude that convicting a defendant of battering a person who was not the victim alleged in the charging information constitutes a material variance, and there was insufficient evidence to support Itaniyi's conviction for battery against Flores as a Class B misdemeanor. Therefore, we reverse and remand with instructions that Itaniyi's battery conviction be vacated. With respect to Itaniyi and Adetokunbo's remaining convictions, we conclude the State presented sufficient evidence.

Affirmed in part, reversed in part, and remanded.

Bailey, J., and Brown J., concur.