## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 19 2016, 6:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Suzy St. John
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin Busic,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 19, 2016

Court of Appeals Case No.
49A02-1508-CR-1020

Appeal from the
Marion Superior Court

The Honorable
Steven J. Rubick, Magistrate

Trial Court Cause No.
49G19-1504-CM-13012

**Kirsch, Judge.**

[1] Following a bench trial, Justin Busic ("Busic") was convicted of disorderly conduct[1] as a Class B misdemeanor. Busic appeals that conviction, raising the following restated issue: whether his conviction was supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] Busic was arrested and charged with one count of Class A misdemeanor battery resulting in bodily injury and one count of Class B misdemeanor disorderly conduct for having "recklessly, knowingly, or intentionally engage[d] in fighting or tumultuous conduct." *Appellant's App.* at 12. Two witnesses testified at Busic's bench trial; Indianapolis Metropolitan Police Officer Chris Maher ("Officer Maher") testified on behalf of the State, and Joshua Thompson ("Thompson"), Busic's brother, testified on Busic's behalf.

[4] Officer Maher testified that, around 3:00 a.m. on April 15, 2015, he was dispatched to the intersection of Fletcher Avenue and Kingbridge Street in Marion County to investigate a reported disturbance. As Officer Maher approached the scene, he saw a truck stopped in the middle of the intersection and three males standing outside the truck. The males, who were later identified as Busic, Thompson, and Michael Smith ("Smith"),[2] were on their

---

[1] *See* Ind. Code § 35-45-1-3.

[2] Smith was identified as Thompson's father.

way home from a bar where Busic and Thompson had been involved in a fight. Officer Maher noted that Busic, who was not wearing a shirt, was "yelling and screaming" at Thompson and Smith from about ten feet away. *Tr.* at 6. As Officer Maher approached the men, he saw Busic start to walk away from the truck. Busic then suddenly turned back toward Thompson and Smith and "angrily shouted" something at them. *Id*. at 9. With his fists clenched, Busic lunged toward Thompson and "punched him[,] knocking him to the ground." *Id*. Busic then walked toward Smith with his fists still clenched. Officer Maher yelled for Busic to stop and warned him that he would be tased if he did not do so. Busic did not stop, but continued toward Smith, prompting Officer Maher to tase Busic. At that time, Officer Maher saw several cuts and injuries on Busic's body and noticed that Busic had slurred speech and smelled of alcohol. Officer Maher took several pictures of Thompson's injuries and arrested Busic.

[5] Thompson testified that Busic neither punched him nor threatened him or Smith that night. *Id*. at 20. Rather, Thompson explained that, as the men were heading home from the bar, Busic got out of the back of the truck and stood near a stop sign. Thompson testified that Busic was dizzy and a little confused, probably because he was "still a little intoxicated," but he was not screaming and yelling, and he was not violent. *Id*. at 18. Thompson testified that two or three officers arrived at the scene and told Busic, Thompson, and Smith to sit down. *Id*. at 16, 19. The officers threatened to deploy their tasers if the men did not comply. Thompson and Smith complied. Thompson testified that he believed Busic stumbled, and that is when Officer Maher used his taser on

Busic. Thompson reiterated that Busic did not touch or lunge at anyone and that no one was yelling. *Id*. at 20-21. On cross-examination, Thompson conceded that he and Busic had been in a fight at the bar earlier in the evening, but that other officers had responded to that scuffle and assured the men that everything was fine. *Id*. at 23. Thompson testified that Officer Maher mistakenly thought he and Busic were fighting at the scene because Thompson had blood on his face from the earlier bar fight. *Id*. at 16.

[6] In closing argument, defense counsel conceded that Busic was inebriated on the night in question and that Busic and Thompson had been in a fight at the bar earlier in the evening. *Id*. at 33. Defense counsel clarified, however, that the earlier tussle was not part of the charging information. *Id*. at 36. Instead, the focus of the disorderly conduct charge was Busic's behavior on the street. *Id*. Counsel reminded the jury of Thompson's testimony that Busic "wasn't running around yelling and screaming and causing any type of tumultuous conduct." *Id*. Accordingly, Busic maintained that "[t]here [was] insufficient evidence . . . to find that the defendant committed battery or engaged in disorderly conduct." *Id*.

[7] Following the bench trial, the trial court found Busic not guilty of battery, but guilty of Class B misdemeanor disorderly conduct. In making its ruling, the trial court, in pertinent part stated,

> Mr. Thompson did not testify on behalf of the State. And when he did testify on behalf of the—of his brother, he very clearly stated that he did not get hit that night. The timing of this

incident is relevant. Late at night after everything is closed down. . . . [O]ne line of Sting's audio poetry states that at night the candle is brighter than the sun. The officer indicated that Mr. Busic was yelling and screaming and at four in the morning[,] sounds that might seem reasonable for Mr. Thompson and Mr. Busic[,] to others might seem overly loud and disruptive. . . . *But I have no reason to discount the officer's testimony that Mr. Busic was engaged in disorderly conduct in the intersection that night*.

*Id*. at 38-40 (emphasis added). Recognizing that Busic suffered a tase on the night he was arrested and had spent two days in the Marion County Jail, the trial court concluded that Busic had "more than adequately suffered sanctions appropriate to his misdeed," and imposed a time-served sentence. *Id*. at 40. Busic now appeals his conviction for disorderly conduct.

## Discussion and Decision

[8] Busic contends that the evidence was insufficient to support his conviction for disorderly conduct. When reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Adetokunbo v. State*, 29 N.E.3d 1277, 1280 (Ind. Ct. App. 2015). We consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Id.* "A conviction will be affirmed 'if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.'" *Id*. at 1280-81 (quoting *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009)). A mere reasonable inference from the evidence supporting a verdict is enough for us to

find evidence to be sufficient. *Blackman v. State*, 868 N.E.2d 579, 583 (Ind. Ct. App. 2007), *trans. denied*.

[9] Indiana Code section 35-45-1-3(a) provides: "A person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons; commits disorderly conduct, a Class B misdemeanor. The charging information alleged: "On or about April 15, 2015, Justin Busic did recklessly, knowingly or intentionally engage in fighting or in tumultuous conduct." *Appellant's App*. at 12. "Tumultuous conduct is defined as conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." *Bailey*, 907 N.E.2d at 1006 (citing Ind. Code § 35-45-1-1 (2008)). Busic asserts that the State failed to prove that he engaged in fighting or tumultuous conduct, as charged. We disagree.

[10] Officer Maher testified that he was dispatched to the intersection of Fletcher Avenue and Kingbridge Street around 3:00 a.m. to investigate a reported disturbance. At the scene, Officer Maher saw Busic, Thompson, and Smith standing outside their truck, which was parked in the middle of an intersection. Officer Maher noted that Busic was not wearing a shirt and was "yelling and screaming" at Thompson and Smith from about ten feet away. *Tr*. at 6. Seeing Officer Maher, Busic began walking away, but suddenly turned, headed toward Thompson and Smith, and "angrily shouted" at them. *Id*. at 9. With his fists clenched, Busic lunged toward Thompson and "punched him[,] knocking him

to the ground." *Id.* Busic then walked toward Smith with his fists still clenched. Officer Maher yelled for Busic to stop and warned him that he would be tased if he did not do so. Busic did not stop; instead, he continued toward Smith. Officer Maher tased Busic "to prevent him from striking [Smith]." *Id.* This evidence was sufficient to prove that Busic committed disorderly conduct by engaging in fighting and in tumultuous conduct.[3]

[11]     We recognize that Busic also suggests that the trial court committed fundamental error because it convicted him of disorderly conduct for having made unreasonable noise, when the charging information and the testimony at trial focused on evidence of disorderly conduct arising out of fighting and of tumultuous conduct. That is, Busic contends that he was improperly convicted of an offense that included an element not alleged in the charging information. As support for his claim of improper conviction, Busic cites to statements made by the trial court at the close of trial—that Busic was "yelling and screaming . . . at four in the morning." *Id.* at 39. Although the trial court made those and other comments about unreasonable noise, the trial court also stated, "But I have no reason to discount the officer's testimony that Mr. Busic was engaged

---

[3] Thompson, testifying on Busic's behalf, stated that Busic had not hit him. Based on this testimony, the trial court found Busic not guilty of battery. The absence of a battery does not, however, undermine Busic's conviction for disorderly conduct. In *Bailey v. State*, 907 N.E.2d 1003, 1007 (Ind. 2009), our Supreme Court found sufficient evidence that the defendant engaged in tumultuous conduct where the "trier of fact could reasonably infer that serious bodily injury would result had Officer Hunter not arrived, given Bailey's anger in approaching Dean Knight, throwing his coat and drink, his verbal tirade, and his cl[e]nched fists." Here, Busic was drunk and angry, and lunged with clenched fists at both Thompson and Smith until he was stopped by Officer Maher's act of deploying his taser.

in disorderly conduct at the intersection that night." *Id*. at 39-40. The trial court was aware of the charges against Busic, believed the testimony given by Officer Maher, and convicted Busic of Class B misdemeanor disorderly conduct. We cannot say that Busic's conviction was improper.

Affirmed.

Mathias, J., and Brown, J., concur.