## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2018, 6:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

Rory Gallagher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Oluwaseyi Ojo,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 13, 2018

Court of Appeals Case No.
49A04-1707-CR-1636

Appeal from the Marion Superior Court

The Honorable Stanley Kroh, Magistrate

Trial Court Cause No.
49G03-1701-CM-4186

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Oluwaseyi Ojo was found guilty of resisting law enforcement by force, a Class A misdemeanor. Ojo now appeals challenging the sufficiency of the evidence. Concluding there was sufficient evidence to support the conviction, we affirm.

# Facts and Procedural History[1]

[2] Around 8:30 A.M. on January 31, 2017, Officer Loren Eltzroth of the Indianapolis Metropolitan Police Department ("IMPD"), stopped at a Phillips 66 gas station. While inside, a customer approached Officer Eltzroth and informed him that a black male wearing a purple coat was urinating in the alley on the west side of the building. Officer Eltzroth located a black male matching the description and approached him in full police uniform. The black male, later identified as Ojo, was found leaning against the building using his cellphone.[2]

[3] Officer Eltzroth asked for Ojo's identification. At first, Ojo ignored Officer Eltzroth and continued looking down at his cellphone but as Officer Eltzroth explained why he was there and why he needed to see identification, Ojo

---

[1] We heard oral argument on this case February 8, 2018, at South Vermillion High School in Clinton, Indiana. We thank the teachers, staff, and students of South Vermillion High School for their generous hospitality and commend counsel for their skilled oral advocacy.

[2] Ojo later testified that he was using the gas station's Wifi.

attempted to talk over Officer Eltzroth "almost as if he were trying to intimidate," while exhibiting a "belligerent, combative and argumentative" demeanor. Transcript, Volume 2 at 10. Ojo stated that he had only been stopped because he was a black male and demanded to know who had reported him. When back-up arrived in the form of IMPD Officer Hinshaw, Ojo attempted to "plead his case" to him, ignoring Officer Eltzroth who was still attempting to speak to him. *Id*. at 11.

[4] With the two officers on either side of him, Ojo repeatedly stated that he "didn't need to know me [sic] identification and he didn't need to identify himself . . . ." *Id.* at 12. Finally, when Officer Hinshaw asked for identification, Ojo reached his left hand to his left pocket and began "digging into the pocket." *Id.* Officer Eltzroth ordered Ojo two or three times to take his hand out of his pocket "immediately." *Id.* Officer Eltzroth then reached forward and grabbed Ojo's right wrist while Officer Hinshaw grabbed Ojo's left wrist. As the two officers attempted to place Ojo in handcuffs, Ojo "forcibly pushed his arms forward in an effort to put his arms and hands in front of him." *Id.* at 14. Officers secured Ojo in handcuffs after about "25 seconds." *Id.* at 15.

[5] When Officer Eltzroth informed Ojo that he was under arrest for resisting, Ojo became cooperative, stating, "Well, I was just getting my identification." *Id.* at 16. Ojo's identification was, in fact, located in his left pocket.

[6] A bench trial was conducted on June 23, 2017. There, after hearing the presentation of evidence, the court concluded:

> I have to tell you I saw two officers walk into this courtroom who appeared to be extremely physically fit. They both testified it took 20 to 25 seconds to get Mr. Ojo to comply and put his hands behind his back and that to the Court is sufficient evidence. I'm more inclined to follow Judge Vaidik's [dissenting] Opinion in [*Berberena v. State*, 914 N.E.2d 780 (Ind. Ct. App. 2009)] . . . . I know different panels at our Indiana Court of Appeals have looked at this force issue many times, but being the person here observing the officers, being able to evaluate their testimony and their actions while they testified, this – in the Court's view, the evidence shows much, much more than just passive resistance[.]

*Id.* at 38.

[7] Ojo was found guilty of resisting law enforcement by force, a Class A misdemeanor, and sentenced to a 180-day term of probation. Ojo now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

### A. Standard of Review

[8] Ojo challenges the sufficiency of the evidence to support his conviction of resisting law enforcement by force.[3]

---

[3] We note that Ojo failed to contest the constitutionality of his arrest at trial and he never objected to the State's admission of evidence regarding his arrest. *See e.g., Raess v. Doescher*, 883 N.E.2d 790, 796 (Ind. 2008) ("Only trial objections . . . are effective to preserve claims of error for appellate review."). Ojo therefore waived any error in its admission. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994) (noting that if an error is not objected to at trial, it cannot be raised on appeal). Waiver prohibits an appellant from raising the issue

When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State,* 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied.* The evidence need not overcome every hypothesis of innocence; rather, the evidence is sufficient if an inference may "reasonably be drawn from it to support the verdict." *Drane v. State,* 867 N.E.2d 144, 146-47 (Ind. 2007).

## B. Resisting Law Enforcement

[9] Indiana Code section 35-44.1-3-1 provides:

> (a) A person who knowingly or intentionally:
>
> > (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer

on appeal unless the appellant can show fundamental error. *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). Ojo did not allege fundamental error in his appellant's brief.

Ojo also fails to contest the constitutionality of his arrest on appeal. Although there was discussion of constitutional issues at oral argument, this is insufficient to avoid waiver. *See Humphrey v. State*, 73 N.E.3d 677, 687 n.2 (Ind. 2017) (noting that constitutional argument raised for the first time in oral argument is waived). This court "cannot reverse on grounds not argued by the appellant unless the violations constitute fundamental error." *Ashworth v. State*, 901 N.E.2d 567, 571 n.3 (Ind. Ct. App. 2009), *trans. denied.*

> while the officer is lawfully engaged in the execution of the officer's duties;
>
> ***
>
> commits resisting law enforcement, a Class A misdemeanor . . . .

[10] The State was therefore required to show that Ojo: 1) knowingly or intentionally; 2) forcibly resisted, obstructed, or interfered with; 3) a law enforcement officer while he was lawfully engaged in the execution of his duties. However, as our supreme court recently noted in *Walker v. State,* "Such a seemingly simple statute . . . has proven to be complex and nuanced in its application." 998 N.E.2d 724, 726 (Ind. 2013).

[11] *Walker v. State* is also our supreme court's most recent exploration of the resisting law enforcement statute. There, an officer arrived on scene to find two men yelling at each other in an intersection before beginning to throw punches. The officer announced his presence and ordered them to stop and to lay down on the ground; when they did not comply within ten or fifteen seconds, the officer threatened to use his taser. One man dropped to the ground while the defendant turned toward the officer, who was about ten feet away, and approached with his fists clenched. The defendant was tased, arrested, and convicted of resisting law enforcement. Our supreme court explained that:

> In *Spangler v. State,* we held that the word "forcibly" is an essential element of the crime and modifies the entire string of verbs—resists, obstructs, or interferes—such that the State must show forcible resistance, forcible obstruction, or forcible

interference. 607 N.E.2d 720, 722-23 (Ind. 1993). We also held that the word meant "something more than mere action." *Id.* at 724. "[O]ne 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.* at 723. "[A]ny action to resist must be done with force in order to violate this statute. It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Id.* at 724.

*Id.* at 726-27. After examining a number of other cases, the court determined:

> [N]ot every passive—or even active—response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence. Moreover, the statute does not require commission of a battery on the officer or actual physical contact—whether initiated by the officer or the defendant. It also contemplates punishment for the active *threat* of such strength, power, or violence when that threat impedes the officer's ability to lawfully execute his or her duties.

*Id.* at 727.

[12]     Although our supreme court declined to create a "strict bright-line test" regarding "forcibly," it explained, "[g]iven the definition we have articulated, we feel confident that triers of fact will make the proper determinations when confronted with the facts of the cases before them, and our body of case law provides ample guideposts for appellate review." *Id.* at 728. Applying that

reasoning to the facts presented, the court held the evidence was sufficient to support a conviction because the defendant's actions—disobeying orders while approaching the officer with clenched fists—constituted a threat of force. *Id.* at 728-29.

[13]     Here, unlike the *threat* of force at issue in *Walker,* Ojo argues that his *action* did not constitute "forcible" resistance. The term "forcibly" is a distinct element of the offense that modifies all three verbs "resists, obstructs, or interferes." *A.A. v. State,* 29 N.E.3d 1277, 1281 (Ind. Ct. App. 2015). In support of his argument, Ojo relies on *Colvin v. State,* 916 N.E.2d 306 (Ind. Ct. App. 2010), *trans. denied.* There, officers were serving a search warrant at an apartment and upon entry observed the defendant in the living room with his hands in his pockets. After officers ordered the defendant to remove his hands and he refused, officers "physically had to place him on the ground and handcuff him." *Id.* at 307. On appeal, we reversed the defendant's conviction for resisting law enforcement, explaining:

> The officers testified only that Colvin was not complying with the officers' commands and that the *officers* had to use force to execute the arrest. The State did not present any evidence that Colvin used force or "made threatening or violent actions" to contribute to the struggle with the officers. Indeed, the testimony shows that Colvin kept his hands in his pockets during the struggle. There is no evidence that Colvin stiffened his arms or otherwise *forcibly* resisted officers.

*Id.* at 309 (citation omitted). Ojo emphasizes the fact that here, as in *Colvin,* the State failed to present evidence that Ojo made a "strong or powerful action" to contribute to the struggle with officers. Brief of Appellant at 10.

Next, Ojo argues that "pulling his hands away" was not a threatening or violent action. *Id.* at 11. Relying on *Berberena v. State,* 914 N.E.2d 780 (Ind. Ct. App. 2009), *trans. denied,* Ojo advances the proposition that simply because officers struggled to handcuff him, that alone is insufficient to support his conviction. In *Berberena,* an officer observed the defendant commit a battery then ordered him to place his hands behind his back. When the defendant failed to comply, the officer had to "forcefully place [the defendant] against the wall of the building . . . and [the officer] had to struggle with him to grab his hands and place them in handcuffs." *Id.* at 781. We again reversed the defendant's conviction on appeal, reasoning that the officer's testimony was "ambiguous" and that there was no evidence that the defendant either stiffened his arms or otherwise "made threatening or violent actions" to contribute to the struggle. *Id.* at 782. Similarly, Ojo argues this record lacks such evidence; we disagree.

Although both cases initially appear favorable to Ojo's position, a closer reading reveals the contrary. The cases Ojo cites involve force used by *officers,* not the *defendant,* and the record here reveals that Ojo actively pulled his arms forward while two officers attempted to handcuff him. On this point, we reviewed an analogous situation in *Jordan v. State*, 37 N.E.3d 525, 535 (Ind. Ct. App. 2015). There, the defendant turned belligerent after a traffic stop and attempted to run away from an officer. When the officer grabbed her shoulder,

she "yanked" away, "twisted and turned," and pulled her arms forward. *Id.* at 529. The officer then swept her feet out from under her and handcuffed her after momentarily struggling to take control of her wrists. Appealing her conviction, the defendant mounted a similar argument to the one now before us, citing both *Berberena* and *Colvin*. And, as we do again today, we distinguished those cases because the State had failed to present evidence of the defendant's use of force whereas in *Jordan,* there was ample evidence that the defendant had used force. We therefore affirmed the defendant's conviction.

[16] As our supreme court explained in *Walker,* forcible resistance does not require an "overwhelming or extreme level of force," rather, the statute may be satisfied with "even a modest exertion of strength, power, or violence." 998 N.E.2d at 726. Applying such standard here, we must agree with the trial court:

> I have to tell you I saw two officers walk into this courtroom who appeared to be extremely physically fit. They both testified it took 20 to 25 seconds to get Mr. Ojo to comply and put his hands behind his back and that to the Court is sufficient evidence.

Tr., Vol 2 at 38. We therefore affirm Ojo's conviction.

# II. Ojo's Arrest

[17] Although the foregoing discussion adequately disposes of the narrow question before us, we would be remiss if we did not discuss the curious juxtapositions created by the underlying facts of this case and, more importantly, question to what extent this case was even necessary.

[18]  Our supreme court has explained:

> In [*Terry v. Ohio*]*,* the Supreme Court [of the United States] held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions.

*Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006). For our purposes, we need not tread into the highly fact-sensitive inquiry of whether—or at what point—Officer Eltzroth developed reasonable suspicion. We will simply assume, as the State argued at trial, that Officer Eltzroth possessed reasonable suspicion and that Ojo was seized for the purposes of *Terry*.[4]

[19]  Instead, we turn our attention to the course of investigation. The record reveals that Officer Eltzroth was informed that an individual had urinated behind the gas station and that he eventually located Ojo, "leaning up against the building, look[ing] like he was doing something on his cell phone." Tr., Vol. 2 at 8.

[20]  Public urination is not—in and of itself—a crime. We are mindful, of course, of the public policy concerns to prevent such activity: it was, after all, 8:30 A.M.

---

[4] The State asserted during closing argument that "Officer Eltzroth briefly detained the defendant in order to ask him questions in order – in the course of his investigation. He asked the defendant to produce his identification." Tr., Vol. 2 at 43. "[Ojo] was being briefly detained because the officers had a reasonable suspicion that he was – that he had committed a crime." *Id.* at 45.

on a Tuesday in a busy location in Indianapolis. But if Officer Eltzroth intended only to address public urination, in the words of Judge Crone, "[t]his leaves [us] wondering why the officer did not merely admonish [Ojo] to leave the [gas station] . . . ." *Johnson v. State,* 38 N.E.3d 658, 665 (Ind. Ct. App. 2015) (J. Crone, dissenting), *trans. denied.*

[21] If, however, Officer Eltzroth suspected that criminal activity was afoot, we must ask what steps were taken to either confirm, or dispel, those suspicions. *Hardister*, 849 N.E.2d at 570. And although public urination could serve as a tell-tale indicator of several crimes, the record is absent any subsequent inquiry or supporting facts. *See e.g., Florida v. Royer,* 460 U.S. 491, 500 (1983) (acknowledging that the methods employed in a *Terry* stop "should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."). Instead, it appears that Officer Eltzroth was singularly focused on obtaining Ojo's identification, regardless of whether or not a crime had been committed. While we leave for another day the question of whether an officer may persist in requesting identification during a *Terry* stop even after the initial reasonable suspicion has been dispelled, we note that the question is certainly presented on these facts.

# Conclusion

[22] For the reasons set forth above, we conclude the State presented sufficient evidence to convict Ojo of resisting law enforcement by force, a Class A misdemeanor, and we therefore affirm Ojo's conviction.

[23]    Affirmed.

Najam, J., and Altice, J., concur.